UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| S R DISTRIBUTING, LLC, | ) | |
|---|---|---|
| Plaintiff(s), | ) | |
| vs. | ) | Case No. 4:19CV00747 SRC |
| PEPPERIDGE FARM, INC., | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Pepperidge Farm, Inc.'s Motion to Dismiss [10]. The Court grants, in part, and denies, in part, the motion.

**I.     BACKGROUND**

Plaintiff S R Distributing LLC filed a petition against Pepperidge Farm, Inc. in the Circuit Court of St. Louis County. Pepperidge Farm removed the matter to this Court. In its petition, SR Distributing alleges Pepperidge Farm violated its distributorship agreement (the "Agreement") with SR Distributing when Pepperidge Farm purchased the rights to distribute to "Club Stores" such as Costco or Sam's Club. SR Distributing asserts seven counts against Pepperidge Farm: (1) Breach of Contract, (2) Violation of the Missouri Franchise Act, § 407.400(1) RSMo. (3) Fraud in the Inducement; (4) Promissory Estoppel, (5) Violation of Missouri's Sales Commissions statute, § 407.913 RSMo, (6) Tortious Interference with Business Expectancy, and (7) an alternative claim seeking Arbitration to Calculate Fair Market Value of the repurchased distributorship rights. In its memorandum in opposition, ECF No. 12, to the motion to dismiss, SR Distributing dismissed the Missouri Franchise Act claim, and the Court does not address it here.

1

## II. STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010). Ordinarily, only the facts alleged in the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Although courts must accept all

factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

**III. DISCUSSION**

In its motion to dismiss, Pepperidge Farm asserts SR Distributing's first six claims must be dismissed for failure to plead sufficient facts. First, Pepperidge Farm states the breach of contract claim must be dismissed because the unambiguous language of the Agreement gives Pepperidge Farm the right to repurchase Club Store rights. Second, Pepperidge Farm contends the claims for fraud in the inducement and promissory estoppel must be dismissed because the claims are improperly premised on an alleged promised made during negotiations. Third, Pepperidge Farm states the claim pursuant to the Missouri Merchandising Practices Act ("MMPA") must be dismissed because SR Distributing has not earned any commissions for the time period in question. Fourth, Pepperidge Farm argues the claim for tortious interference with business expectancy must be dismissed because it does not identify an actionable business expectancy independent of the contract. Finally, Pepperidge Farm contends SR Distributing's claim for arbitration to calculate the fair market value is unnecessary because SR Distributing has the right to initiate arbitration without judicial involvement and has not yet done so.

  *A. Breach of Contract Claim – Count I*

Pepperidge Farm asserts the breach of contract claim must be dismissed because Section 20 of the agreement unambiguously permits Pepperidge Farm to repurchase the Club Store rights. In response, SR Distributing argues Section 20 gives Pepperidge Farm the option to repurchase territory only, not any rights of the Agreement.

In Missouri,[1] to state a claim for breach of contract, a plaintiff must establish the existence of a valid contract, the rights of the plaintiff and obligations of the defendant under the contract, a breach by the defendant, and damages resulting from the breach. *Spectrum Brands, Inc. v. Compton's LLC*, No. 2:16CV30 HEA, 2018 WL 3995687 at *4 (E.D. Mo. Aug. 21, 2018) (citing *Gillis v. Principia Corp.*, 832 F.3d 865, 871 (8th Cir. 2016)). If the contract is unambiguous, the Court must not consider any extrinsic or parol evidence as to the intent and meaning of the contract. *Id*. "Courts may not unreasonably distort the language of a [contract] or exercise inventive powers for the purpose of creating an ambiguity where none exists." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007). An ambiguity does not exist just because the parties dispute the meaning of the contract. *Iappini v. Silverleaf Resorts, Inc.*, 116 F. Supp. 3d 932, 938 (E.D. Mo. 2015). "Rather, a contract is ambiguous when the terms are susceptible to more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." *Id*. The Court must read the terms of the contract as a whole, given their plain, ordinary, and usual meaning. *Heisel v. John Deere Constr. & Forestry Co.*, No. 4:07CV1712 DDN, 2008 WL 53232 at *7 (E.D. Mo. Jan. 2, 2008) (citing *Pepsi MidAmerica v. Harris*, 232 S.W.3d 648, 654-55 (Mo. Ct. App. 2007)).

Section 20 of the Agreement states as follows:

> BAKERY'S OPTION TO BUY DISTRIBUTORSHIP. Bakery [Pepperidge Farm] shall have the right in its discretion to purchase all or any portion of the Distributorship at any time upon written notice to Consignee [SR Distributing]. Bakery shall become the owner of the Distributorship, or the portion being purchased, on the date specified in the notice, whether or not a final purchase price has been agreed upon or determined, as provided below. Bakery may begin operating the Distributorship, or the portion being purchased, for its own account on such date. If Bakery elects to purchase all or any portion of the Distributorship pursuant to this Paragraph, it will pay to Consignee a sum equal to (a) the fair market value of the Distributorship, or the portion thereof being purchased, as the

---

[1] The Agreement does not include a choice-of-law provision. The parties, in their briefs, applied Missouri law; thus, the Court does so as well.

4

case may be, on the date set forth in the written notice plus (b) 25% of such fair market value, to be determined either by agreement between Bakery and Consignee or, if they shall be unable to agree, by three arbitrators. . .

ECF No. 5-1. The Agreement contains various definitions, including:

> (c) TERRITORY – refers to the territory described in Schedule A hereto.
>
> . . .
>
> (g) DISTRIBUTION OR DISTRIBUTE – refers to the sale and delivery of Consigned Products to retail stores within the Territory and to such hotels, restaurants, etc., as may be authorized by Bakery per Paragraph 9.
>
> . . .
>
> (j) DISTRIBUTION – refers to the distribution rights described in, and established under, this Agreement.

ECF No. 5-1, pg. 14. It does not include a definition of "distributorship." Black's Law Dictionary defines "distributorship" as "a company that has an arrangement to sell the products of another company." Black's Law Dictionary (11th ed. 2019).

The plain and ordinary meaning of the Agreement gives Pepperidge Farm the ability to purchase all or any portion of the distributorship, including specific rights outlined in the agreement; it does not limit the purchase to all or any portion of the territory of the distributorship. If the parties mean to limit Section 20 to only repurchasing territory then they would have used the defined term "Territory" in Section 20.

Examining the entirety of the Agreement shows that the undefined term "Distributorship" means something different from, and broader than, the defined term "Territory." For example, Section 18 addresses sale of the "Distributorship" and distinguishes between a proposed sale that "involves the division of the Territory or the sale of only a portion of the Distributorship," "proposed division of the Territory[,]" and "transfer or assignment of the Distributorship, as a whole or in part[.]" ECF No. 5-1, pg. 17. If "Distributorship" meant "Territory," the distinctions

in Section 18 would make no sense, or lead to the absurd result that in some sections of the Agreement "Distributorship" means "Territory" and in others it means something broader. *Guller v. Waks*, 550 S.W.3d 505, 510 (Mo. Ct. App. 2017) (When interpreting contracts, a court should attempt to avoid absurd results.). In its complaint, SR Distributing acknowledges the broader meaning by referring to the entirety of its business with Pepperidge Farm as a "Distributorship." *See* ECF No. 5 ("Steven Redohl operated his Father's Pepperidge Farm Distributorship"; "Father and his son decided to transfer the ownership of Father's Pepperidge Farm Distributorship"; Steven Redohl had formed S.R. Distributing, LLC in order to own and operate his Father's Pepperidge Farm Distributorship.").

SR Distributing points the Court to Section 26 to further define what "all or any portion of the Distributorship" means. Section 26 states:

> DURATION OF CONSIGNMENT AGREEMENT. This Agreement shall continue in effect until terminated in the manner provided in Paragraphs 19, 21, 22 or 23, until Bakery has given Consignee written notice of Bakery's election to purchase all or any portion of the Distributorship, as provided in Paragraph 20, or until Bakery has purchased all or any portion of the Distributorship pursuant to the Right of First Refusal, as provided in Paragraph 17. In the event that Bakery has given Consignee written notice of its election to purchase a portion of the Distributorship pursuant to the Right of First Refusal as provided in Paragraph 17, the parties shall promptly enter into a new Consignment Agreement in substantially the same form hereof, except for the modification of the Description of Territory in Schedule A to reflect such a purchase.

ECF No. 5-1. SR Distributing argues this section provides clear guidance that "all or any portion of the Distributorship" obviously references a geographic description of the territory and not a contractual right of the consignee/distributor. The Court does not agree. The use of "Description of Territory" in Section 26 applies only when the Bakery elects to purchase a portion of the Distributorship pursuant to the Right of First Refusal as provided in Section 17. It does not state the "Description of Territory" must be modified if the Bakery elects to purchase all or any portion of the Distributorship under Section 20. Section 26 simply provides that if

6

Pepperidge Farm purchases a portion of the Distributorship pursuant to its Right of First Refusal, the parties will enter into a new agreement with a modified Schedule A to reflect any changes in the Territory caused by the right-of-first-refusal purchase.

SR Distributing argues Section 20 can only apply to purchasing a portion of the territory because otherwise, it would conflict with Section 1, relating to exclusivity of distributorship. Section 1 states:

> EXCLUSIVE OF DISTRIBUTORSHIP. Consignee will have the exclusive right to distribute Consigned Products to retail stores within the Territory, and Bakery will not sell or deliver or authorize any others to sell or deliver Consigned Products to retail stores (except for the in-store bakeries, food-service counters and food-service sections located in retail stores) within the Territory except in connection with temporary sales programs and except for sales to direct customers pursuant to orders solicited by Consignee under Paragraph 3(b); provided however that Bakery will have the exclusive right to distribute Consigned Products to retail facilities owned or operated by Bakery or by any corporation controlled by Bakery. The terms of this Paragraph are subject, however, to the terms of Paragraphs 6, 7, and 9.

ECF No. 5-1.[2] The plain meaning of Section 1 excludes from the "exclusive right to distribute" any portion of the distributorship that the Bakery repurchases, whether it be certain consigned products, territory, or other rights under the Agreement. Under SR Distributing's proffered reading, Section 1 would eliminate *any* repurchase rights Pepperidge Farm has under Sections 17, 18, or 20. But courts must give meaning to every provision in a contract. *Maddock v. Lewis*, 386 S.W.2d 406, 411 (Mo. 1965) ("[W]e should accord meaning to every provision of the agreement."). Section 20 therefore permits Pepperidge Farm to purchase all or any portion of the distributorship and does not limit Pepperidge Farm to purchasing all or any portion of the "Territory." The Court dismisses SR Distributing's breach of contract claim.

      B.      *Fraud in the Inducement and Promissory Estoppel Claims – Counts III and IV*

---

[2] Paragraphs 6, 7, and 9 refer, respectively, to: Emergency Service, Failure to Service Particular Stores, and Prohibited Sales and Deliveries.

Pepperidge Farm asserts a fully-integrated agreement covering the same topics bars SR Distributing's fraud in the inducement and promissory estoppel claims. Pepperidge Farm also argues Missouri's economic loss doctrine precludes SR Distributing's fraudulent inducement claim.

Under Missouri law, a claim for fraudulent inducement requires (1) that the defendant made certain material representations to the plaintiff; (2) such representations were false when made; (3) that the defendant knew the representations were false; (4) that the representations were made with the purpose of deceiving the plaintiff; (5) that the plaintiff was deceived; (6) the plaintiff reasonably relied on the representations; and (7) the plaintiff suffered damages as a proximate result of the fraudulent misrepresentations. *Graham Const. Servs., Inc. v. Hammer & Steel, Inc.*, No. 4:11CV1316 JCH, 2012 WL 5438994 at *4 (E.D. Mo. Nov. 7, 2012). When a fraudulent misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved, it constitutes fraud in the inducement. *Lion Petroleum of Mo., Inc. v. Millennium Super Stop, LLC*, No. 4:06CV0698 AGF, 2008 WL 3010789 at *5 (E.D. Mo. Aug. 1, 2008). But, "[a] party cannot allege reliance on promises made in the course of negotiations whether written or oral, true or false, if the party subsequently enters into a written agreement silent on the matter." *Id.* at *6 (citing *Toghiyany v. AmeriGas Propane, Inc.*, 309 F.3d 1088, 1092 (8th Cir. 2002)).

SR Distributing's fraud in the inducement claim alleges Pepperidge Farm misrepresented to SR Distributing that it would never voluntarily purchase Club Stores from SR Distributing and that the terms of the Agreement would not allow them to do so; that Pepperidge Farm knew or should have known these representations were false and would never be honored; that these misrepresentations were material and convinced SR Distributing to execute the Agreement; that

8

the misrepresentations were false and were not honored; that Pepperidge Farm's intention at the time of making the representations was for the purpose of inducing SR Distributing to sign the Agreement to gain an economic benefit; that SR Distributing was ignorant and unaware of any information that would have indicated the falsity of the representations, omissions, and promises; that SR Distributing relied on the truth and honesty of the representations; and that as a result of the misrepresentations, SR Distributing sustained direct and proximate harm and damages. ECF No. 5, pgs. 8-9.

SR Distributing cannot establish reliance with the misrepresentations alleged. The alleged misrepresentation that Pepperidge Farm would never voluntarily purchase distribution to Club Stores from SR Distributing was a promise made in the course of negotiations. According to the complaint, in February 2017, Pepperidge Farm management told Steven Redohl it would not force a buyback of Club stores from a distributor. The parties entered the Agreement in August 2017. As determined above, the Agreement specifically allows for Pepperidge Farm to purchase the distribution rights to Club Stores from SR Distributing. As stated in *Lion Petroleum*, if this issue was material to SR Distributing, "one would have expected [SR Distributing] to have made sure this term was included in the written agreement." 2008 WL 3010789 at *6. Instead, SR Distributing agreed to a contract that explicitly allows Pepperidge Farm to purchase the Club-Stores distribution rights.

SR Distributing also cannot rely on the alleged misrepresentation that the terms of the Agreement would not allow Pepperidge Farm to purchase the rights to distribute to Club stores. "False representations as to the legal effect of an instrument are no bar to an action thereon because a party signing such an instrument is presumed to know its contents and has no right to rely on the representations of the other party as to its legal effect." *Battlefield Center, L.P. v.*

9

*Nat'l City Corp.*, No. 4:08CV00625 JCH, 2008 WL 4790328 at *7 (E.D. Mo. Oct. 27, 2008) (citing *Stein v. Stein Egg & Poultry Co.*, 606 S.W.2d 203, 205 (Mo. Ct. App. 1980)). The Court must presume SR Distributing knew the contents of the Agreement. SR Distributing cannot rely on Pepperidge Farm as to whether the Agreement allowed Pepperidge Farm to purchase the rights to distribute to Club Stores. Because SR Distributing cannot establish reliance on the alleged misrepresentations, it fails to state a claim from fraudulent inducement. The Court dismisses Count III.

The Court analyzes the claim for promissory estoppel similarly. Under Missouri law, a claim for promissory estoppel requires: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; (4) that results in an injustice that only enforcement of the promise could cure. *Williams v. Medalist Golf, Inc.*, 910 F.3d 1041, 1047 (8th Cir. 2018). "Ordinarily, promissory estoppel serves as an equitable remedy where an express contract does not exist." *Id*. The promise element cannot be based on preliminary negotiations and discussions, or an agreement to negotiate the terms of a future contract. *Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 890 (E.D. Mo. 2013). A claim for promissory estoppel cannot be asserted when an unambiguous contract exists that covers the issue for which damages are sought. *Saey v. Xerox Corp.*, 31 F. Supp. 2d. 692, 698 (E.D. Mo. 1998).

SR Distributing's promissory estoppel claim alleges Pepperidge Farm made a promise to SR Distributing that it would never involuntarily purchase Club Stores from SR Distributing and that the terms of the Agreement would not allow it to do so; that SR Distributing relied on this promise to its detriment; Pepperidge Farm reasonably expected SR Distributing to rely on the

10

promise; and that it would be an injustice in allowing Pepperidge Farm to escape from the enforcement of its promise. ECF No. 5, pgs. 9-10.

SR Distributing's promissory estoppel claim raises several issues. First, similar to its claim for fraudulent inducement, SR Distributing relies on preliminary negotiations and discussions to establish the promise element. But, the "promise element cannot be based on preliminary negotiations and discussions[.]'" *Reitz*, 954 F. Supp. 2d at 890 (quoting *The 1861 Group, LLC v. Wild Oats Mkts., Inc.*, 728 F. Supp. 2d 1052, 1059 (E.D. Mo. 2010)). Second, promissory estoppel exists where an express contract does not exist; here, the parties entered into an express contract. *See Williams*, 910 F.3d at 1047 ("Ordinarily, promissory estoppel serves as an equitable remedy where an express contract does not exist."). Finally, promissory estoppel does not lie when an unambiguous contract between the parties exists that covers the issue for which damages are sought. *Saey*, 31 F. Supp. 2d. at 698. For these reasons, SR Distributing fails to state a claim for promissory estoppel and the Court dismisses Count IV.

D.      *MMPA Claim – Count V*

Pepperidge Farm argues SR Distributing's claim for violation of the MMPA must be dismissed because SR Distributing failed to pled any facts to support its contention that it earned commissions after the effective date of Pepperidge Farm's notice of purchase on February 2, 2018. SR Distributing's MMPA claim alleges Pepperidge Farm has failed to timely pay sales representative commissions earned by SR Distributing for Club Stores in SR Distributing's exclusive territory from February 2, 2018, to date.

Missouri Revised Statute § 407.912 states: "When a commission becomes due shall be determined in the following manner: (1) The written terms of the contract between the principal and sales representative shall control; . . ." The Agreement precludes SR Distributing's MMPA

claim. The obligation of Pepperidge Farm to pay any commissions on Club Stores ceased on the date Pepperidge Farm provided notice of purchase of the distribution rights to Club Stores, February 2, 2018. ECF No. 5-1, pg. 18 ("Notice of purchase pursuant to this Paragraph shall operate to release all rights and obligations hereunder of both Bakery and Consignee except (a) the right to receive any favorable balances and the obligation to pay any adverse balances and (b) the rights and obligations with respect to payment and arbitration stated in this Paragraph."). The Agreement likewise terminated SR Distributing's obligations on that date, and it did not earn any further commissions. SR Distributing does not allege Pepperidge Farm failed to pay any commissions before that date. Pursuant to the Agreement, SR Distributing did not earn any commissions after February 2, 2018, and the Court dismisses its claim under the MMPA for unpaid commissions.

   *E.*  *Tortious Interference with Business Expectancy Claim – Count VI*

  Pepperidge Farm asserts SR Distributing cannot maintain a claim for tortious interference with a business expectancy because Pepperidge Farm claims SR Distributing has no actionable business expectancy in its distributorship. To state a claim for tortious interference with a business expectancy, a plaintiff must allege: "(1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Vilcek v. Uber USA, LLC*, 902 F.3d 815, 818 (8th Cir. 2018). A valid business expectancy is a reasonable expectation of economic advantage or commercial relations. *Id*.

  When a contract alone creates a business expectancy, a plaintiff cannot bring a claim for tortious interference with a business expectancy against a party to the contract. *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010). In opposition to the motion to dismiss, SR

Distributing *argues* its relationship with the retail stores in its exclusive territory predates the Agreement because the relationships date back to when Steven Redohl's father employed him in his distributorship for Pepperidge Farm. But, in its Complaint, SR Distributing *alleges* it "had a valid business expectancy with the Club Stores within its exclusive Territory to receive commissions based upon [Pepperidge Farm's] shipment of goods to said Club Stores." ECF No. 5, ¶ 63.

This allegation, which the Court must accept as true, makes clear that SR Distributing's relationships with retail stores in its territory result solely from the Agreement with Pepperidge Farm. SR Distributing only received commissions because of its contract with Pepperidge Farm. SR Distributing cannot bring a claim for tortious interference with a business expectancy because its contract with Pepperidge Farm alone creates the business expectancy. The Court dismisses Count VI.

      *F.      Arbitration Claim – Count VII*

Pepperidge Farm asserts that a court order for arbitration to determine the valuation of the Club Store rights is premature and unnecessary because SR Distributing has not initiated arbitration or informed Pepperidge Farm of its desire to arbitrate as required by Section 20 of the Agreement. Pepperidge Farm agrees that arbitration is the only appropriate means of resolving the parties' valuation dispute. Because the parties agree that they must arbitrate to determine the valuation of Club Store rights, and because there are no remaining claims in this matter, there is no case or controversy and the Court does not have Article III jurisdiction over this claim. *Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 881 (8th Cir. 2015) ("To satisfy constitutional standing requirements, the plaintiff must make out a 'case or controversy' between [itself] and the defendant."). The Court dismisses Count VIII.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Pepperidge Farm, Inc.'s Motion to Dismiss [10] is **GRANTED**.  The Court dismisses all claims in SR Distributing's complaint.  The Court dismisses Counts I and III-VI with prejudice.

**IT IS FURTHER ORDERED** that Count II is dismissed without prejudice, pursuant to SR Distributing's Memorandum in Opposition to Defendant's Motion to Dismiss. Doc. 12.

**IT IS FINALLY ORDERED** that the Court dismisses Count VII without prejudice.

So Ordered this 22nd day of October, 2019.

*/s/ SR.CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**